UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TERRENCE LOCKETT o/b/o T.J.L,                    17-CV-1333-MJR

                    Plaintiff,                   DECISION AND ORDER

        -v-

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

        Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States

Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 9).

        Plaintiff Terrence Lockett brings this action pursuant to 42 U.S.C. §§405(g) and

1383(c)(3) on behalf of his child, T.J.L., seeking judicial review of the final decision of the

Commissioner of Social Security denying T.J.L. Supplemental Security Income Benefits

("SSI") under the Social Security Act (the "Act").  Both parties have moved for judgment

on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the

following reasons, Lockett's motion (Dkt. No. 10) is denied and the Commissioner's

motion (Dkt. No. 13) is granted.

## **BACKGROUND**

        On December 6, 2013, Lockett filed an SSI application on behalf of T.J.L alleging

that T.J.L. has been disabled since July 1, 2011 due to attention deficit hyperactivity

disorder ("ADHD").  (*See* Tr. 192, 311).[1]  Born in 2000, T.J.L was thirteen-years old at the

time of the application.  (*See* Tr. 192).  The application was denied on March 19, 2014,

(Tr. 192-206), after which Lockett requested a hearing before an Administrative Law

_____

[1]        References to "Tr." are to the administrative record in this case.

Judge (Tr. 146-48).   On April 19, 2016, Lockett appeared with counsel before Administrative Law Judge Robert T. Harvey ("ALJ Harvey") for a hearing.  (Tr. 149-64).  A second hearing was held before ALJ Harvey on August 16, 2016, at which both Lockett and T.J.L. appeared with counsel.  (Tr. 165-91).   Due to ALJ Harvey's retirement, the case was reassigned to Administrative Law Judge Michael W. Devlin ("ALJ Devlin"), who issued a decision on September 9, 2016 denying T.J.L.'s SSI claim.  (Tr. 16-41).  Lockett requested review by the Appeals Council (Tr. 270), but on October 26, 2017, the Appeals Council denied Lockett's request, making the ALJ's decision the final decision of the Commissioner (Tr. 1-6).  This action followed.

## DISCUSSION

### I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner."  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the

conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    *Standards for Determining "Disability" Under the Act*

An individual under the age of eighteen is considered disabled within the meaning of the Act "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i). The Commissioner has set forth a three-step process to determine whether a child is disabled as defined under the Act. *See* 20 C.F.R. §416.924. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. *Id.* §416.924(b). If so, the child is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the child has a medically

determinable impairment(s) that is "severe." *Id.* §416.924(c). If the child does not have a severe impairment(s), he or she is not disabled. *Id.* If the child does have a severe impairment(s), the ALJ continues to step three and examines whether the child's impairment(s) meets, medically equals, or functionally equals the listed impairments in Appendix 1 to Subpart P of Part 404 of the Commissioner's regulations (the "Listings"). *Id.* §416.924(d). In determining whether an impairment(s) functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for him or herself; and (6) health and physical well-being. *Id.* §416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must result in "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* §416.926a(a). A child has a "marked" limitation when his or her impairment(s) "interferes seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* §416.926a(e)(2). A child has an "extreme" limitation when his or her impairment(s) "interferes very seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* §416.926a(e)(3). If the child has an impairment(s) that meets, medically equals, or functionally equals the Listings, and the impairment(s) meets the Act's duration requirement, the ALJ will find the child disabled. *Id.* §416.924(d).

III. *ALJ Devlin's Decision*

ALJ Devlin followed the required three-step process for evaluating T.J.L.'s SSI claim. At the first step, ALJ Devlin found that T.J.L. has not engaged in substantial gainful activity since December 6, 2013, his application date. (Tr. 22). At the second step, ALJ

Devlin determined that T.J.L. has the severe impairment of ADHD. (*Id.*). At the third step, ALJ Devlin found that T.J.L. does not have an impairment or combination of impairments that meets or medically equals one of the Listings. (*Id.*). ALJ Devlin then proceeded to consider whether T.J.L. has an impairment or combination of impairments that functionally equals the Listings, but he concluded that T.J.L. does not because he has less than marked limitation or no limitation in all six domains of functioning. (Tr. 22-36). As a result, ALJ Devlin held that T.J.L. has not been disabled within the meaning of the Act since his December 6, 2013 application date. (Tr. 36).

IV. *Lockett's Challenges*

Lockett challenges the Commissioner's disability decision on three grounds: first, that ALJ Devlin improperly relied upon T.J.L.'s failure to take his medication in denying T.J.L.'s claim; second, that ALJ Devlin misassessed his credibility; and third, that ALJ Devlin's finding in the domain of acquiring and using information is not supported by substantial evidence. (*See* Dkt. No. 10-1 (Lockett's Memo. of Law)). The Court will address each challenge in turn.

A. *T.J.L.'s Medication*

Citing SSR 82-59, Lockett argues that ALJ Devlin improperly relied upon T.J.L.'s failure to take his medication in denying T.J.L.'s claim, and that the ALJ should have given T.J.L. an opportunity to discuss his use of medication before denying his claim.

SSR 82-59, entitled "Failure to Follow Prescribed Treatment," applies when a claimant *who suffers from a disabling impairment* fails to follow prescribed treatment that would restore his ability to work. 1982 WL 31384, at *1 (1982). In such instances, the ALJ may deny a claimant's benefits claim based on his failure to follow the prescribed

treatment, but only after giving the claimant an opportunity to explain why he did not adhere to that treatment. *Id.* at *1-2. After giving the claimant an opportunity to be heard, the ALJ must then determine whether the claimant's failure to follow the prescribed treatment is "justifiable," and if it is, the claimant's failure to follow treatment will not preclude a finding of disability. *Id.* at *3.

Here, contrary to Lockett's argument, SSR 82-59 is not applicable because ALJ Devlin never found that T.J.L. suffers from a disabling impairment when he is off his medication. ALJ Devlin thus had no obligation to give Lockett or T.J.L. an opportunity to explain why T.J.L. did not take his medication.

Moreover, ALJ Devlin properly considered T.J.L.'s use of medication in his decision. The Commissioner's regulations direct the ALJ to consider the effects of the claimant's medications in assessing his functional limitations. *See* 20 C.F.R. §416.926a(a)(3). ALJ Devlin did just that by noting in his decision how T.J.L.'s functioning improved when he took his medication. (Tr. 24-25, 28, 30-33, 35). Indeed, as ALJ Devlin correctly noted in his decision, Lockett and T.J.L both found T.J.L.'s medication to be "beneficial," and they believed he should continue to take it. (Tr. 28 *referring to* Tr. 517). The ALJ did not, as Lockett seems to argue, draw an adverse inference against T.J.L. for not taking his medication; rather, he simply found that T.J.L. displayed improved behavior when he did take his medication. The regulations allow the ALJ to make such a finding. Accordingly, for these reasons, Lockett's first objection to ALJ Devlin's decision is without merit.

B. _Credibility Finding_

Lockett next argues that ALJ Devlin failed to make a specific credibility finding regarding his testimony and statements.

It is well settled that it is the role of the ALJ, not the Court, to appraise the credibility of witnesses. _See Carroll_, 705 F.2d at 642. "The ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged." _Fisk v. Colvin_, No. 14-CV-931S, 2017 WL 1159730, at *5 (W.D.N.Y. Mar. 29, 2017). The Commissioner has set forth a two-step process to evaluate testimony regarding symptoms. First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or other alleged symptoms. Second, if the ALJ finds that the claimant is so impaired, he must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If statements about the claimant's pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a credibility finding. _See_ SSR 96-7P, 1996 WL 374186 (July 2, 1996); SSR 16-3P, 2017 WL 5180304 (Oct. 25, 2017).[2] "The ALJ's decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the ALJ gave to the individual's statements and the reasons for that weight." _Cichocki v. Astrue_, 534 F. App'x 71, 76 (2d Cir. 2013) (summary order) (internal quotation marks, brackets, and citation

---

[2]     SSR 16-3P supersedes SSR 96-7P. SSR 16-3P "eliminat[es] the use of the term 'credibility,'" but the process for evaluating symptoms under SSR 16-3P and SSR 96-7P is the same. _Compare_ SSR 96-7P, 1996 WL 374186, _with_ SSR 16-3P, 2017 WL 5180304.

omitted).  These principals also apply to testimony given by the claimant's parent when the claimant is unable to adequately describe his own symptoms.  *See Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 151-52 (N.D.N.Y. 2012).

Here, at the first step of the credibility analysis, ALJ Devlin determined that T.J.L's medically determinable impairments could reasonably be expected to produce his alleged symptoms, but at the second step, ALJ Devlin found that T.J.L's and Lockett's statements concerning the intensity, persistence, and limiting effects of T.J.L.'s symptoms are "not entirely consistent with the medical and other evidence in the record." (Tr. 24).  It is clear from this statement and ALJ Devlin's discussion of the evidence that ALJ Devlin opted not to credit Lockett's testimony.  For example, ALJ Devlin specifically noted Lockett's allegation that T.J.L. is disabled due to ADHD and cannot understand, carryout, or remember simple instructions (Tr. 23 *referring to* Tr. 301, 311), but he found these allegations inconsistent with medical records indicating that T.J.L. can attend to, follow, and understand age-appropriate directions (Tr. 27 *referring to* Tr. 461).  ALJ Devlin also considered Lockett's report that T.J.L. is very agitated, displays violence, and yells uncontrollably (Tr. 23 *referring to* Tr. 319), but he went on to cite recent treatment records indicating that T.J.L.'s ability to interact with others improved when he attended the Villa of Hope program (Tr. 28-29 *referring to* Tr. 559).  ALJ Devlin's decision makes clear that he did not fully credit Lockett's statements and testimony regarding T.J.L.'s symptoms, and it adequately sets forth his reasons for doing so.  *See Phelps v. Colvin*, 20 F. Supp. 3d 392, 404 (W.D.N.Y. 2014) ("Although the ALJ did not expressly state the weight she did or did not give to Ms. Matthews' testimony (*e.g.* 'little weight' or 'great weight'), the ALJ did discuss the testimony in such a way as to make it clear to a reviewer of the

decision that she discredited Ms. Matthews' opinion.").[3]   Accordingly, Lockett's second

objection to ALJ Devlin's disability decision is without merit.

## C. *Domain of Acquiring and Using Information*

Finally, Lockett argues that ALJ Devlin "cherry picked" unfavorable evidence to

support his conclusion that T.J.L. has no limitation in the domain of acquiring and using

information, and ignored other evidence in the record that he believes supports a different

conclusion, specifically:  T.J.L. having failed eighth grade twice; how T.J.L. struggled with

his homework; how T.J.L. acted disruptively at school; T.J.L.'s disciplinary issues at

school; and how T.J.L. received a "Section 504 Plan"[4] while enrolled in the Villa of Hope

program.

Contrary to Lockett's argument, ALJ Devlin touched upon nearly all of the

foregoing issues in his decision.  (*See* Tr. 23 (noting that T.J.L. failed two grades); Tr. 25

(noting that T.J.L. struggled to complete his schoolwork); Tr. 23, 25 (discussing how T.J.L.

acted disruptively at school); Tr. 23-24, 27-28 (discussing T.J.L.'s school suspensions)).[5]

ALJ Devlin ultimately chose to credit other evidence in the record indicating that T.J.L. is

not limited in the domain of acquiring and using information.  In particular, ALJ Devlin

noted a report from T.J.L.'s teachers stating that T.J.L. could engage in learning and pass

his classes when he took his medication.  (Tr. 30 *referring* to Tr. 472).  T.J.L. could ask

---

[3]      Lockett's reliance on *Williams v. Bowen*, 859 F.2d 255 (2d Cir. 1988) in support of his credibility
argument is without merit.  In *Williams*, the ALJ failed to make any finding regarding the credibility of the
claimant or her mother, and, in fact, entirely failed to discuss their testimony in his decision.  *See id.* at 260.
To compare, here, ALJ Devlin discussed both Lockett's and T.J.L.'s testimony and statements in his
decision (Tr. 23-24) and explained in sufficient detail why he chose not to credit their testimony and
statements.

[4]      "504 Plan" is in reference to Section 504 of the Rehabilitation Act, 29 U.S.C. §794.

[5]      Although ALJ Devlin did not specifically mention T.J.L.'s Section 504 Plan in his decision, he did
discuss T.J.L.'s time at Villa of Hope and how his functioning improved there.  (Tr. 28-29).  In any event, an
ALJ is not required to expressly discuss every last shred of evidence in the record.

and answer relevant questions that show higher-level thinking, write in complete sentences, speak clearly, and read comprehensively. (Tr. 30 *referring to* Tr. 472). ALJ Devlin further noted how Dr. Susan Santarpia, the consultative examiner, estimated T.J.L.'s cognitive functioning to be in the average range of ability. (Tr. 30 *referring to* Tr. 461). In January 2015, T.J.L. was focusing well and completing his homework. (Tr. 28 *referring to* Tr. 529).

ALJ Devlin also gave some weight to the opinions of state agency review psychologist Dr. L. Hoffman, consultative examiner Dr. Susan Santarpia, and T.J.L.'s teacher, Michelene Murphy, all of which support the ALJ's conclusion that T.J.L. has no limitations in the domain of acquiring and using information. (Tr. 29). Dr. Hoffman opined that T.J.L. has no limitations at all in this particular domain (Tr. 196-97), while Ms. Murphy opined that T.J.L. has no problems or only slight problems in certain areas of functioning relevant to the domain (Tr. 324-31).[6] Similarly, Dr. Santarpia opined in relevant part that T.J.L. can attend to, follow, and understand age-appropriate directions, learn in accordance to cognitive functioning, and ask questions and request assistance in an age-appropriate manner. (Tr. 459-62).

It is the role of the ALJ, not the Court, to weigh the evidence and resolve any conflicts therein. *See Carroll*, 705 F.2d at 642. Based upon the evidence discussed above, substantial evidence supports ALJ Devlin's conclusion that T.J.L. has no limitation in the domain of acquiring and using information. Lockett's third objection to ALJ Devlin's decision is thus without merit.

---

[6]   Ms. Murphy noted in her report that T.J.L attended some classes with a "co-teacher." (Tr. 324). Lockett interprets this statement to mean that T.J.L. attended special education, but other evidence in the record indicates that T.J.L. actually received regular education. (*See* Tr. 459, 478).

## <u>CONCLUSION</u>

For the foregoing reasons, Lockett's motion for judgment on the pleadings (Dkt. No. 10) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:     May 15, 2019
            Buffalo, New York

                                 */s/ Michael J. Roemer*
                                 MICHAEL J. ROEMER
                                 United States Magistrate Judge